Elmer **BECKER** and Gailord Weseman, a partnership, d/b/a Third City Live-stock Commission Co., Plaintiff,

v.

Lawrence G. **KOZA,** Defendant.

**UNIVERSAL SURETY COMPANY,** a corporation, Defendant and Third-Party Plaintiff,

v.

Charles **KOZA** and Mary Koza, husband and wife, Defendants.

Civ. No. 1751 L.

United States District Court,
D. Nebraska.

Sept. 10, 1971.

Supplemental Opinion Oct. 18, 1971.

Richard L. DeBacker, Grand Island, Neb., for plaintiffs.

James W. Hewitt, Lincoln, Neb., for defendant Universal Surety.

## MEMORANDUM

URBOM, District Judge.

This is an action on a market agency bond written under the Packers and Stockyards Act, as amended, 7 U.S.C. § 181 et seq., against the surety, Universal Surety Company, for the face value of the bond, $35,000.00. The principal, Lawrence G. Koza, also a party to the lawsuit, was sued for sums due on checks he gave to the plaintiff in payment for hogs purchased, but the checks were not paid by the drawee bank because of insufficient funds. The matter is now before the court on the plaintiff's motion for a summary judgment against the surety.

This action was commenced in the District Court of Hall County, Nebraska, and later was removed to this court by the defendant Universal Surety Company. After removal both defendants, Universal Surety and Koza, answered. However, Koza's failure to answer or object to a request for admissions which was served upon him resulted in this court's granting of a motion for a summary judgment against Koza in the amount of $84,177.96, together with interest and costs. Although a hearing was held on February 26, 1971, on the plaintiff's motion for a summary judgment against Koza, neither Koza nor his counsel appeared at that hearing. Counsel for Universal Surety Company, James W. Hewitt, was present at the February 26 hearing but he did not purport to represent Koza.

The plaintiff also filed two different sets of requests for admissions on Universal Surety Company. Both sets were answered, but objections were made to some of the requests in the second set. Thereafter, the plaintiff filed the present motion for a summary judgment against Universal Surety Company, based upon the requests for admissions and the summary judgment previously entered against Koza. Universal Surety Company objected to the use of the summary judgment against Koza as evidence against Universal Surety Company. Moreover, Universal Surety Company placed into evidence an affidavit of James W. Hewitt, counsel for Universal Surety Company, for the purpose of showing the existence of a genuine issue of fact. This is the present posture of the case.

The motion raises two legal issues: (1) whether the affidavit of James W. Hewitt raises a genuine factual issue and therefore requires the overruling of the motion, and (2) whether the judgment rendered against Koza may be used to bind Universal Surety Company.

## THE AFFIDAVIT OF COUNSEL

Rule 56(e) of the Federal Rules of Civil Procedure provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The significant features of the rule, applicable in this case, are that affidavits must be made on *personal knowledge*, must set forth facts which *would be admissible in evidence*, and must show affirmatively that the affiant *is*

*competent to testify to the matters* stated therein. The affidavits must set forth *specific facts* showing that there is a genuine issue.

The affidavit states:

"JAMES W. HEWITT, being first duly sworn, upon his oath deposes and says that he is the attorney for Universal Surety Company; that the affidavit of Richard L. DeBacker, attorney for the plaintiff herein, is in error in stating that no genuine issue remains for trial in this case.

"Affiant further states that nowhere in the pleadings, Requests for Admissions and Answers thereto is it admitted by Universal Surety Company that the hogs admittedly purchased by Lawrence R. Koza were ever delivered to him; that acting upon express statements made to it by Lawrence R. Koza, Universal Surety Company denies the delivery of some of the hogs purchased by Lawrence R. Koza, the exact number being unknown at this time, and that Universal Surety Company will offer the testimony of Lawrence R. Koza to that effect at the time of trial.

"Affiant further states that there is no privity between Universal Surety Company and Lawrence R. Koza which would enable the Summary Judgment entered in this action against Lawrence R. Koza to be conclusive against Universal Surety Company, and that plaintiff is not entitled to a judgment herein as a matter of law."

In applying Rule 56(e) to the affidavit, it is apparent that the only *specific facts* which are made on the *personal knowledge* of the affiant are that Universal Surety Company, upon express statements made to it by Lawrence R. Koza, denies the delivery of some of the hogs and that Universal Surety Company will offer the testimony of Lawrence R. Koza to that effect at the time of the trial. But those facts constitute nothing more than a denial of alleged facts and a declaration of intention to produce evidence. None of the declarations in the affidavit could be testified to by the affiant at a trial. The facts set out in the affidavit would not be admissible because they constitute only a denial of allegations and an expression of an intention to produce evidence. If the affidavit can be interpreted as containing a statement that Lawrence R. Koza has said that some of the hogs were not delivered, then the statement is hearsay and would not be admissible in testimony by the affiant.

The developing case law reflects an attitude of judicial disapprobation of the practice of submitting affidavits which embody the sworn statements of counsel of his conclusions or of what another person has told him. See, for example, Maddox v. Aetna Casualty and Surety Company, 259 F.2d 51 (C.A.5th Cir. 1958); Inglett & Company v. Everglades Fertilizer Company, 255 F.2d 342 (C.A.5th Cir. 1958); Local Union No. 490, U. R. C. L. & P. Wkrs. v. Kirkhill Rubber Co., 367 F.2d 956 (C.A.9th Cir. 1966); Universal Film Exchanges, Inc. v. Walter Reade, Inc., 37 F.R.D. 4 (U.S. D.C. S.D.N.Y.1965); Chambers v. United States, 357 F.2d 24 (C.A.8th Cir. 1966); and 3 Barron & Holtzoff, Federal Practice and Procedure, § 1237 (1958), 1970 Pocket Part, pp. 120–121.

In Kern v. Tri-State Insurance Company, 386 F.2d 754 (C.A.8th Cir. 1968), the plaintiff attempted to avoid a summary judgment in the district court by submitting the affidavit of a doctor, which rested not upon the doctor's personal knowledge, but upon letters written by other doctors and summaries of hospital records. Judge Mehaffy, in affirming the order granting summary judgment, held that the trial judge properly had held that the affidavit did not raise an issue of fact because it was not based upon personal knowledge. Citing with approval the *Maddox* case, the court in turn emphasized that Rule 56(e) requires that such affidavits *shall*

be made on personal knowledge and *shall* set forth such facts as would be admissible in evidence.

Judge John R. Brown in Inglett & Company v. Everglades Fertilizer Company, supra, said:

" * * * (W)ithout impugning any improper professional motive to this obviously able counsel, we doubt that the disposition of patent cases is furthered by counsel being the personal vehicle by which the 'undisputed' facts are put before the Court. We consider it a tribute to the high calling of advocacy to say that we think it an unnatural, if not virtually impossible, task for counsel, in his own case, to drop his garments of advocacy and take on the somber garb of an objective fact-stater."

No reason appears in the present case for not having submitted an affidavit of Koza. Rule 56(f) provides a remedy if facts essential to justify an opposition to a motion for a summary judgment are not available or for some reason cannot be obtained, but that remedy requires that an affidavit opposing the motion state the reasons for an inability to present the facts. No such affidavit is present in this case. If Koza were unwilling to sign an affidavit, no reason appears why his deposition could not have been taken.

 In determining whether summary judgment is appropriate, the court must consider the admissibility of the evidence contained in the affidavit. Neff v. World Publishing Company, 349 F.2d 235 (C.A.8th Cir. 1965); Doza v. American Nat. Ins. Co., 314 F.2d 230 (C.A.8th Cir. 1963); Walling v. Fairmont Creamery Company, 139 F.2d 318 (C.A.8th Cir. 1943). Inadmissible evidence does not comply with Rule 56(e) and is incompetent to raise a genuine issue of fact. Neff v. World Publishing Company, supra. The question arises in the present case as to whether a different result should obtain where the plaintiff did not object to the admission into evidence of the affidavit. At most the failure to object to an affidavit which is objectionable under Rule 56(e) permits the court to consider the affidavit. Klingman v. National Indemnity Company, 317 F.2d 850 (C.A.7th Cir. 1963); Auto Drive-Away Company of Hialeah, Inc. v. I. C. C., 360 F.2d 466 (C.A.5th Cir. 1966); United States for Use and Benefit of Austin v. Western Electric Co., 337 F.2d 568 (C.A.9th Cir. 1964); Mitchell v. Dooley Bros., Inc., 286 F.2d 40 (C.A.1st Cir. 1960); and 6 Moore's Federal Practice, ¶ 56.22(1) and n. 52. While possessing the discretion to consider the affidavit, I am inclined, nevertheless, to disregard it, because the evidence contained therein would be inadmissible at trial. Another factor influences my thinking: Even if the affidavit had been of Koza, the present information contained in the affidavit would remain insufficient to raise a genuine issue of fact. Apparently the defense which the surety seeks to interpose would be lack of consideration, that is, nondelivery of an unspecified number of hogs to Koza. Before such a defense would offer the surety any benefit, the amount of shortages by nondelivery would have to be in excess of $49,177.96, since the judgment against Koza is $84,177.96 and the amount of the bond is $35,000.00. It strains credulity to believe that such shortages exist in light of the failure of Universal to submit any evidence of the value of the shortages.

## THE EFFECT OF AN ADJUDICATION AGAINST THE PRINCIPAL IN AN ACTION AGAINST THE SURETY

Three separate approaches have been used by the courts to bind the surety with a prior adjudication against the principal: (1) the rule of conclusive liability, (2) the prima facie evidence rule, and (3) the rebuttable presumption rule. See Haug, "Public Official Bonds—

Judgments Against Principal as Binding on Surety," October Insurance Counsel Journal, 573 (1967). Also, a few jurisdictions hold that a judgment against the principal is no evidence against his surety. United States Fid. & Guar. Co. v. State for Use and Benefit of Stringfellow, 182 So.2d 919 (Miss.1966) and Rodini v. Lytle, 17 Mont. 448, 43 P. 501 (1896). See generally, 72 C.J.S. Principal and Surety § 261 and Restatement of Law of Security § 139.

Even considering the judgment rendered against Koza as a default judgment, which Universal Surety Company urges, the result is that other courts are divided over the effect of the judgment where both the surety and the principal are parties to the action. Compare Massachusetts Bonding & Ins. Co. v. Central Finance Corp., 124 Colo. 379, 237 P.2d 1079 (1951) (judgment held conclusive against surety); Home Ins. Co. v. Savage, 231 Mo.App. 569, 103 S.W.2d 900 (1937) (judgment held prima facie evidence against surety); Charleston & W. C. R. Co. v. Robert G. Lassiter & Co., 208 N.C. 209, 179 S.E. 879 (1935) (judgment held prima facie evidence against surety); United States to Use of Fidelity Nat. Bank v. Rundle, 107 F. 227 (C.A.9th Cir. 1901); and Sutter v. Hill, 60 Ohio Law Abst. 410, 101 N.E.2d 502 (1950, App.). See Anno.: "Judgment—Effect—Principal and Surety," 59 A.L.R.2d 752, 757 (1958).

The initial effort must be to ascertain what effect, if any, the Supreme Court of Nebraska would give the Koza judgment in establishing the liability of Universal Surety Company. While no recent case has been discovered on the subject, the early case of Barker v. Wheeler, 60 Neb. 470, 83 N.W. 678 (1900), reversed on other grounds 62 Neb. 150, 87 N.W. 20 (1901), provides ample indication as to the Nebraska rule. The 1900 *Barker* case was a sequel to an earlier case, Wheeler v. Barker, 51 Neb. 846, 71 N.W. 750 (1897) in which the Supreme Court of Nebraska had re-versed the trial court's dismissal of the action at the pleading stage. From the 1897 case it appears that the principal and surety had been jointly sued, but after the reversal the plaintiff commenced suit against the principal (a county judge) alone and recovered a verdict in the District Court of Douglas County, Nebraska. The basis of the suit against the county judge was the alleged conversion of trust money paid into the court. Subsequently, the plaintiff sued the surety and introduced into evidence the Douglas County judgment against the county judge to show that he had converted the plaintiff's money. The surety appealed and in the 1900 case argued before the Supreme Court of Nebraska that the judgment against its principal could not be used to establish its liability on the bond. The Supreme Court of Nebraska rejected this contention, holding that the judgment had been properly received into evidence and constituted prima facie evidence of the conversion. In reaching that decision the Supreme Court of Nebraska was careful to draw the distinction between bonds which bind the surety to pay any judgment and bonds which are in the nature of a general undertaking to answer for misconduct. It is only in the former case that the surety will be held to be conclusively liable. The Supreme Court of Nebraska observed:

" * * * ' In Fire Association of Philadelphia v. Ruby, 49 Neb. 584, 68 N.W. 939, it was held that a judgment of amercement against an officer is prima facie evidence against his sureties when sued upon their bond. This decision seems to be supported by the preponderance of adjudged cases, and it will be adhered to. Graves v. Bulkley, 25 Kan. 249; Fay v. Edmiston, Id. 439; Lipscomb v. Postell, 38 Miss. 476; Charles v. Hoskins, 14 Iowa 471; Stephens v. Shafer, 48 Wis. 54, 3 N.W. 835; Beauchaine v. McKinnon, 55 Minn. 318, 56 N.W. 1065; People, to Use of Norris v. Mersereau, 74

Mich. 687, 42 N.W. 153. Thomas v. Markmann, 43 Neb. 823, 62 N.W. 206, and Lewis v. Mills, 47 Neb. 910, 66 N.W. 817, holding that such a judgment is conclusive upon the sureties, appear to be, in part at least, based upon Pasewalk v. Bollman, 29 Neb. 519, 45 N.W. 780, which merely decides that a surety who agrees to pay any judgment that may be recovered against his principal must, in the absence of fraud or collusion, abide by his contract. That the court in the last-mentioned case clearly recognized the distinction between agreements of sureties to be bound by judgments against their principals and general undertakings to answer for official misconduct is shown by the following statement in the opinion: 'In the case of most official bonds, the sureties do not promise to pay any judgment rendered against the principal; hence a judgment against the official on such a bond is not conclusive upon the sureties where the latter had no notice of the suit.' The defendants in the present case did not agree to satisfy any judgment that might be recovered against their principal. Their undertaking was, in general terms, that he would perform his official duty. Upon the question of whether he had been guilty of misconduct in office, they were entitled to be heard. It is contrary to natural justice that they should be concluded by a judgment to which they were not parties, and by which they did not agree to be bound. While Thomas v. Markmann, supra, and Lewis v. Mills, are not without the support of respectable authority, we are of opinion that they extend the liability of the surety beyond the terms of his agreement, and disregard entirely the strict rule of construction applicable to such contracts. To the extent that those cases are in conflict with Fire Association of Philadelphia v. Ruby, supra, they are overruled."

The bond in the present case is similar in all material respects to the bond in the 1900 *Barker* case. I conclude, therefore, that the judgment against the principal, Koza, is prima facie evidence of Koza's breach of obligation. Coupled with Universal Surety Company's answers to requests for admissions, the judgment affords grounds for a summary judgment in the absence of opposing evidence. The affidavit of counsel having been the only evidence offered by the surety and its having constituted no competent showing of the follows that the motion for a summary existence of a genuine issue of fact, it judgment must be granted in the amount of the bond.

The plaintiff has requested interest and attorney fees. While it may be that the interest issue could be determined from the record now before the court, the attorney fee question should be presented more fully by the principal and the surety, and perhaps by other parties. At the time the latter question is considered by the parties, the court suggests that the interest issue also be considered.

*Friday, September 17, 1971, at 2:00 p. m.* is reserved for the court's hearing such presentations, either by evidence or oral argument, or both, as the parties choose to make on the interest and attorney fee issues. If any brief is to be submitted, it may be submitted to the judge on or before the time scheduled for the hearing, whether or not the offeror of the brief desires to be present at the hearing.

Judgment will be withheld for the time being.

## SUPPLEMENTAL OPINION

The plaintiffs have requested attorney fees and interest. On September 17, 1971, a hearing was held on these matters and briefs have been submitted. The plaintiffs contend that interest should be computed from June 3, 1970,

the date the plaintiffs' claim had been audited by the United States Department of Agriculture, Packers and Stockyard Administration, and that agency was prepared to transmit proof of claim. Therefore, the plaintiffs urge that the claim against Universal Surety Company had been ascertained and computed as of that date, citing Mid-States Engineering v. Rohde, 182 Neb. 590, 156 N.W.2d 149 (1968).

Universal Surety relies on the rule enunciated in Lundt v. Parsons Construction Co., 181 Neb. 609, 150 N.W.2d 108 (1967), asserting that the amount due on the surety bond could not be calculated until this court entered summary judgment for the plaintiff against Universal Surety Company. The Supreme Court of Nebraska in *Lundt* stated:

"We have recently stated the rule concerning the right to recover interest on an unliquidated claim in a contract action. In Muller Enterprises, Inc. v. Gerber, 178 Neb. 463, 133 N.W.2d 913, we held that recovery of interest on an unliquidated claim, the subject of reasonable controversy and incapable of being fixed by computation, may be had only from the date of determination of the right of recovery and the ascertainment of the amount. See, also, Colvin v. John Powell & Co., Inc., 163 Neb. 112, 77 N.W.2d 900; National Fire Ins. Co. of Hartford v. Evertson, 157 Neb. 540, 60 N.W.2d 638; School Dist. No. 65R v. Universal Surety Co., 178 Neb. 746, 135 N.W.2d 232."

Universal Surety Company has satisfied the first condition of an unliquidated claim—that the claim be subject to a reasonable controversy. Until this court held on September 10, 1971, that a judgment against the principal is *prima facie* evidence of the principal's breach of obligation in a subsequent action against the surety on its bond, the effect of the judgment was subject to a reasonable controversy.

However, *Lundt* indicates that a second condition must exist before a claim may be found to be unliquidated—that the claim be incapable of exact computation. The law of the case as to any controversy involving the amount of recovery to be had against Universal Surety Company is established by the following passage from this court's earlier memorandum:

"Apparently the defense which the surety seeks to interpose would be lack of consideration, that is, nondelivery of an unspecified number of hogs to Koza. Before such a defense would offer the surety any benefit, the amount of shortages by nondelivery would have to be in excess of $49,177.96, since the judgment against Koza is $84,177.96 and the amount of the bond is $35,000.00. It strains credulity to believe that such shortages exist in light of the failure of Universal to submit any evidence of the value of the shortages."

■ It would be incongruous to hold on the motion for summary judgment that the defense of lack of consideration raised by Universal Surety Company was untenable as a matter of law and yet is sufficient to raise a reasonable controversy as to the amount of recovery when determining the date from which interest should be computed. Nevertheless, this court does not agree with the plaintiffs that June 3, 1970, is the date on which it can be said no reasonable controversy existed as to the amount of recovery. I conclude that June 16, 1971, is the date that the plaintiffs reasonably can claim that no reasonable controversy existed as to the *amount* for which Universal Surety Company would be liable under its bond with Koza. On that date this court entered summary judgment against Koza and in favor of the plaintiffs and it is that judgment which the plaintiffs have successfully used to establish Universal Surety Company's *prima facie* liability under its bond with Koza. The plaintiffs cite no authority

and the court has been unable to discover any authority which would hold a surety liable on a bond before the liability of his principal had been established. I decline to hold, as contended by Universal Surety Company, that interest should be calculated from the date of September 10, 1971, when the memorandum was entered determining that summary judgment would be entered against Universal Surety Company, because such a determination would tend to encourage wholly unmeritorious defenses.

■ A fee should be allowed the plaintiffs' counsel in the amount of Three Thousand Dollars ($3,000.00).

Summary judgment will be entered.